**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

BEST PAYPHONES, INC.,

                                    Petitioner,

                                                            **REPORT AND**
                                                            **RECOMMENDATION**

              -against-
                                                            01-CV-3934 (LDH) (ST)
ALLAN DOBRIN, et al.,                                       01-CV-8506 (LDH) (ST)
                                                            03-CV-0192 (LDH) (ST)
                                    Respondents.

--------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

       Plaintiff Best Payphones filed these three consolidated actions against New York City,

various municipal defendants, and individual public officials in 2001 and 2003.  At the time, Best

Payphones was an owner and operator of public pay telephones on public rights-of-way in New

York City.  All three actions revolve around the City's efforts to require private companies to enter

into franchise agreements before operating public pay telephones on New York City's public

rights-of-way.  Best Payphones claims that, in so doing, the defendants singled out Best Payphones

for adverse treatment and violated its constitutional rights.

       In a memorandum and order dated September 27, 2019, the District Court adopted this

Court's Report and Recommendation with modifications; the District Court denied the plaintiff's

motion for summary judgment and granted in part and denied in part the defendant's motion for

summary judgment.  Mem. & Order, ECF No. 554.  The District Court additionally directed the

parties to file supplemental briefing on the appropriate standard for the plaintiff's unconstitutional

conditions claim.  *Id.* at 13-14.  Following supplemental briefing, the District Court referred the

unconstitutional condition claim to me for a report and recommendation.  Order, Dec. 17, 2019.

Because this Court finds controverted facts that are material to the plaintiff's unconstitutional

conditions claim, it is respectfully recommended that summary judgment be DENIED with respect

to the unconstitutional condition claim.

A. **Factual Background**[1]

In September 1995, the New York City Council enacted Local Law 68, which set forth new regulations for payphones on the public rights-of-way.  Mot. Summ. J., Ex. A ("Local Law 68 of 1995"), ECF No. 485-3, at 2-13.[2]  Local Law 68 required that public pay telephones be permitted and companies operating such phones enter into a franchise agreement in order to obtain a permit.  NYC Admin. Code §§ 23-402, 23-403(a)(1).

Best operated 839 public pay telephones on the public rights-of-way at the time that Local Law 68 was enacted.  Chaite Decl., ECF No. 486-2 ¶¶ 3, 7.  Best Payphones compiled a list of the addresses of its public pay telephones and submitted the list to the Department of Information Technology and Telecommunications ("DoITT") so that Best Payphones would qualify for a safe harbor under Local Law 68.  Chaite Decl. ¶ 6.

On August 11, 1999, DoITT recommended Best for a franchise and the City's Franchise and Concession Review Committee ("FCRC") approved Best for a franchise upon the execution of a franchise agreement.  Mot. Summ. J., Ex. K ("FCRC Resolution"), Dkt. No. 485-3 at 198.  On August 13, 1999, Best received the franchise agreement.  The initial deadline to submit the executed documents was October 15, 1999.  The due date was later extended to November 15, 1999.  Samuelson Decl., ECF No. 485-2 ¶ 24.

Mr. Chaite, the owner of Best, communicated with DoITT regarding the franchise agreement application in the fall of 1999.  *See* Mot. Summ. J., Exs. M–R, ECF No. 485-3.  He predominantly addressed two topics: *first*, he asked for an extension to complete the franchise agreement so that he could complete a sale of his public pay telephones, Mot. Summ. J., Exs. M, R, and; *second*, he discussed DoITT's alleged favoritism to an industry group and the barrier to entry for smaller telecommunications companies.  Mot. Summ. J., Ex. O, ECF No. 485-3.

---

[1]    This Court assumes the reader's familiarity with the underlying proceedings and only discusses the facts that are relevant to the present disposition.

[2]    Citations to the record refer to the page numbers that are assigned by the electronic case filing system.

On January 13, 2000, DoITT sent Best a letter requesting that Best submit an executed copy of the franchise agreement. Mot. Summ. J., Ex. S., ECF No. 485-3. The letter put Best on-notice that it had sixty days to submit the franchise agreement. *Id.* If Best did not enter into the franchise agreement, it would be required to either enter into an agreement to sell its public pay telephones to an entity that had been awarded a public pay telephone franchise or remove its public pay telephones within sixty days. *Id.* The letter warned that if Best failed to take action then the City would remove all of Best's public pay telephones located on City property. *Id.*

On March 8, 2000, Mr. Chaite indicated that he still had concerns with the franchise agreement and stated that he would not sign it without modifications. Mot. Summ. J., Ex. V, ECF No. 485-3. Mr. Chaite requested an extension beyond the March 13, 2000 deadline to finalize the sale of Best's stock. *Id.* In the event of a deadline, Mr. Chaite asked that a meeting be arranged to discuss his concerns. DoITT denied Mr. Chaite's request for an extension. *Id.*

On the day of the March 13 deadline, an attorney for Best, Charles Ryan, took over corresponding with the City, raising several of Best's concerns with the franchise agreement. Mot. Summ. J., Ex. X, ECF No. 485-3.

Mr. Ryans claimed that Best should be allowed to operate its public pay phones with interim permits. Mr. Ryans argued that DoITT could not force Best to execute the franchise agreement in the given timeline. *Id.* Further, Mr. Ryans also conveyed that Mr. Chaite had "several legitimate concerns about various provisions of the franchise agreements . . . including requirements that, in effect foist onerous restrictions upon payphone providers, including restrictions on the sale of the registered phones, which are clearly in violation of Section 253 of the Telecommunications Act of 1996." *Id.* at 285.

Regarding the legality of the regulatory scheme, Mr. Ryans raised several specific arguments, including: *first*, that the City was not charging fees in a competitively neutral manner, as required by the TCA, because it had waived the $59.00 permit fee for some companies; *second*, that the franchise fees charged by the City were not "fair and reasonable" as required by the TCA because the fees were not based on the City's costs but rather on the revenue of franchisees; *third*,

that the fee scheme was not competitively neutral because Best would be required to pay twice the amount of its competitor.  Mot. Summ. J., Ex. AA, ECF No. 485-3.  In a letter responding to Mr. Ryans' concerns, Mr. Regal claimed that the scheme was legal and cited recent caselaw purporting to vindicate the DoITT's position.  Mot. Summ. J., Ex. Z, ECF No. 485-3 (citing *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 620 (6th Cir. 2000)).

Mr. Ryans advised that Best would "have to take appropriate action to protect its equitable and property interests if the City" did not either (1) grant an extension of time so that Mr. Chaite could sell the company or (2) "modify the franchise framework to conform to City, State and Federal law so that the current owner of Best could sign a legal document."  Mot. Summ. J, Ex. Y, ECF No. 485-3.  In a final letter, Mr. Ryans also notified the City that Mr. Chaite had "an interested buyer for its payphone business" and requested that DoITT "forward to me the necessary documents . . . and information that the buyer needs from the City in order to facilitate an orderly transfer."  Mot. Summ. J., Ex. AA, ECF No. 485-3.

Mr. Ryan never received a response from the City.  Opp. Mot. Summ. J., Ex. 11, ECF No. 486-4.  Instead, between May 8 and May 10, 2000, the City removed twenty-three of Best's payphones and issued notices of violation ("NOVs") charging $23,000 in fines.  Chaite Decl. ¶ 17; Opp., Ex. 13, ECF No. 486-4.

On May 10, 2000, Best delivered to the City certain closing documents and an executed franchise agreement, which Best annotated to state that its execution was "under duress caused by the City's actions in removing its payphones from City property, and [] under protest of the City's authority to implement portions of the agreement which Best believes to be in violation of certain State and Federal laws," and "reserv[ing] its rights to challenge the Franchise Agreement," and stating that "the Franchise Agreement signed by Best shall not be construed as a waiver of any such rights."  Mot. Summ. J., Ex. 14 ("Franchise Agreement" or "FA"), ECF No. 485-4; Exs. Pl's Mot. Summ. J., Ex. R, ECF No. 491-10.

On June 7, 2001, Best Payphones filed suit against the City of New York and DoITT.  Compl., ECF No. 1, 01-CV-3934.  Best then filed another two suits against the City of New York

4

and DoITT on December 20, 2001 and January 13, 2003.  Compl., ECF No. 1, 01-CV-8506; Compl., ECF No. 1, 03-CV-192.  These cases were consolidated on March 30, 2006.  Then-Magistrate Judge Kiyo A. Matsumoto designated 03-CV-192 as the lead case and directed that the amended complaint in that action serve as the governing complaint for the purposes of the consolidated action.  Order, ECF No. 79.

After Plaintiff filed the Second Amended and Supplemental Complaint, Defendants filed a Motion to Dismiss.  Mot. Dismiss, ECF No. 150.  On June 30, 2008, Judge Matsumoto recommended that Plaintiff's Second Amended and Supplemental Complaint be dismissed, with the exception of Plaintiff's First Amendment and Equal Protection claims.  R. & R., ECF No. 192, at 111.  The Honorable John Gleeson adopted Judge Matsumoto's report and recommendation in full.  Order Adopting R. & R., ECF No. 202.

At the direction of Magistrate Judge Andrew Carter, Plaintiff filed its Third Amended Complaint on August 20, 2010.  Order Directing Pl., ECF No. 258; Third Amended Complaint, ECF No. 261.  The Third Amended Complaint is now the operative complaint in the case.  *See* Order Adopting R. & R., Sept. 18, 2015 (denying motion to file fourth amended complaint); R. & R., ECF No. 534, at 4.

On July 29, 2015, Judge Gleeson referred the parties' prospective summary judgment motions to Judge Scanlon for a report and recommendation.  Min. Order, July 29, 2015.  On March 10, 2016, the case was reassigned to Judge LaShann DeArcy Hall, and, on April 7, 2016, the case was referred to me.  On July 7, 2016, Defendants moved for summary judgment, Mot. Summ. J., ECF No. 485 ("Defs.' Mot. Summ. J."), and, the next day, Plaintiff also moved for summary judgment.  Mot. Summ. J. ("Pl.'s Mot. Summ. J."), ECF No. 488.

On September 13, 2018, this Court issued a Report and Recommendation, finding that Plaintiff's motion for summary judgment should be denied in its entirety, and that the Equal Protection and First Amendment retaliation claims remained in the case.  R. & R. ("Sept. 13 R. & R."), ECF No. 534.  In addition, this Court found that the section 1983 conspiracy claim and First Amendment unconstitutional condition claim remained in the case.  *Id.*  Defendants argued that

5

the franchise agreement did not include an unconstitutional condition because, in part, the franchise agreement did not contain a provision that required Best to waive its right to challenge the validity of the agreement in court. Sept. 13 R. & R. at 78. This Court discussed the relevant portion of the City's Franchise Agreement in the context of the Second Circuit's decision in *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 81 (2d Cir. 2002).

In *TCG New York*, a telecommunications carrier challenged the validity of White Plains' franchising ordinance and proposed franchised agreements for placement of equipment on public rights-of-way. *TCG New York*, 305 F.3d at 71–73. The district court found that section 3.1(4) of the White Plains franchise agreement "seeks to require TCG to waive its legal right, including those under the TCA, to challenge the terms or conditions of the franchise agreement." *TCG New York, Inc. v. City of White Plains, N.Y.*, 125 F. Supp. 2d 81, 94 (S.D.N.Y. 2000), *aff'd in relevant part*, 305 F.3d 67 (2d Cir. 2002). The court found that "these restrictions do not relate to rights-of-way management." *Id.* (citing cases). Accordingly, the district court found the waiver provisions are invalid under section 253(c) of the Telecommunications Act of 1996. *Id.* The Second Circuit held that the district court properly invalidated section 3.1(4) of the agreement, stating that the condition was "a transparent attempt to circumvent § 253." 305 F.3d at 82. Further, the court stated, "[t]he provision would have been completely unenforceable had TCG agreed to it, but it was improper for White Plains to even propose it." *Id.*

This Court found that there was "no meaningful difference between" section 3.1(4) of the White Plains franchise agreement and section 14.3.2 of the City's Franchise Agreement. Sept. 13 R. & R. at 81. Thus, following the Second Circuit's decision in *TCG New York*, "in so far as the [Franchise Agreement] contains identical language, that language constitutes a waiver of the right to challenge the [Franchise Agreement's] validity as a matter of law." *Id.* at 79 (citations omitted).

Despite this finding, however, this Court remained "unpersuaded by Best's papers." *Id.* at 82. This Court deemed the issue to be "inadequately briefed and decline[d] to recommend summary judgment." *Id.*

In a memorandum and order dated September 27, 2019, the District Court adopted this

Court's report and recommendation in part.  Mem. & Order ("Sept. 27 Mem. & Order"), ECF No. 554.  The District Court dismissed Plaintiff's equal protection claim.  *Id.* at 34, 40.  The District Court found that the unconstitutional condition claim remained in the case and agreed with this Court's "assessment that the parties failed to properly brief their arguments on the merits of the claim."  Sept. 27 Mem. & Order at 13.  The District Court noted that "[c]ourts have applied different levels of scrutiny to such claims depending on the nature of the alleged unconstitutional condition."  *Id.* (citing caselaw).  The District Court directed the parties to submit supplemental briefing and, on December 17, 2019, the Court referred the unconstitutional condition claim to me for a report and recommendation.  Order, Dec. 17, 2019.

### B.  Analysis

The sole remaining question at the current stage of litigation is whether the City imposed an unconstitutional condition on Best when it placed a waiver provision in the Franchise Agreement.  This Court finds that controverted facts preclude an answer to this question.

It is well-settled that, generally, "the government may not deny a benefit to a person because he exercises a constitutional right."  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, (2013) (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983)); *see also Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (discussing the unconstitutional conditions doctrine as "well-settled").  In *Perry v. Sindermann*, 408 U.S. 593 (1972), for instance, the Court held that a state college may not refuse to renew an employment contract because a teacher exercised his first amendment rights by publicly criticizing the policies of the college administration.  *Id.* at 597.  The Court held that it was immaterial that the teacher had no contractual or tenure right to reemployment.  *Id.*

The Court recently reaffirmed that "denials of governmental benefits [are] impermissible under the unconstitutional conditions doctrine."  *Koontz*, 570 U.S. at 606 (citations omitted).  It is immaterial "whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right," because "the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise

7

them." *Id.*; *see also United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 210 (2003) ("[T]he government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." (quoting *Board of Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668, 674 (1996) (other citation omitted)).

In order to assert a cognizable claim under the unconstitutional conditions doctrine, a challenger must assert the violation of an underlying constitutional right. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006) (denying unconstitutional condition claim where challengers had no cognizable First Amendment challenge). Put another way, the Constitution does not forbid a government from placing as a condition something that it could lawfully impose directly. *Id.*; *see also Perry*, 408 U.S. at 597 (stating that government may not effectuate by way of a condition "a result which [it] could not command directly" (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).

Best Payphones asserts that the Franchise Agreement violates the unconstitutional conditions doctrine because the Agreement contains a provision that waives its right to challenge the agreement. Pl.'s Supp. Br., ECF No. 558, at 1; Pl.'s Supp. Reply, ECF No. 569, at 9. Best Payphones raises a cognizable claim under the First Amendment based on its right to petition. *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the government for a redress of grievances."); *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963) (recognizing that First Amendment protections have been incorporated against the states); *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) ("This Court's precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes"); *see also, e.g.*, *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty., N.C.*, 149 F.3d 277, 278 (4th Cir. 1998) (holding that no-challenge provision in contract could be challenged under the Petition Clause).

Yet even where there is a valid underlying constitutional right, some conditions may be validly imposed if they are sufficiently supported by governmental interests. For instance, in *Snepp v. United States*, 444 U.S. 507 (1980), the Supreme Court rejected a First Amendment

8

challenge brought by a CIA officer to his employment contract, which conditioned the acceptance of employment on his agreement not to disclose classified information.  The Court held that agreement was a "reasonable means" for protecting the government's "compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality." *Id.* at 509 n.3.

In the case at hand, this Court questions whether *any* governmental interest could validly support the waiver provision in the Franchise Agreement, as it is a condition that is unlawful on its face.  *See TCG New York*, 305 F.3d at 82 (holding that it was "improper for White Plains to even propose" a waiver in a franchise agreement where it was facially invalid under the TCA).  Regardless, this Court does not reach the standard of review because Plaintiff has not demonstrated uncontroverted facts demonstrating its entitlement to relief for the alleged constitutional violation.

A plaintiff alleging claims under 42 U.S.C. § 1983 must show that the alleged constitutional violation *caused* the alleged harm.[3]  *See Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019); *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999).  "'[P]roximate cause,' although derived from tort law, fairly describes a plaintiff's causation burden with respect to a municipal liability claim under § 1983."  *Cash v. Cty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) (citations omitted); *see also Washington v. City of New York*, No. 18-CV-12306 (CM), 2019 WL 2120524, at *15 (S.D.N.Y. Apr. 30, 2019) ("There must be a direct causal link between the policy or custom and the constitutional violation.").[4]

> "[I]n all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlineer v. Gleason*, 160 F.3d

---

[3]    The District Court stated the elements as follows: "To the extent that the City maintained a formal policy of including in the FA an unconstitutional condition, and Plaintiff was harmed by such a policy, Plaintiff can demonstrate *Monell* liability."  Mem. & Order, ECF No. 554, at 35.

[4]    Plaintiff implicitly recognizes the causation element when it states that the "'coercive effect' is the 'problem with unconstitutional conditions' and the reason such conditions are impermissible." Pl.'s Supp. Reply, ECF No. 569, at 4 n.3 (quoting Kathleen Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1415, 1428).  What follows from this formulation is that Plaintiff cannot show that the unconstitutional condition is impermissible *unless* there is coercion involved.  While this Court rests its present disposition on the causation element contained in § 1983, the cited article on the unconstitutional conditions doctrine supports the same result that is reached here.

858, 872 (2d Cir. 1988). A defendant may be held liable for "those consequences attributable to reasonable foreseeable intervening forces, including the acts of third parties." *Warner v. Orange Cnty, Dept. of Probation*, 115 F.3d 1068, 1071 (2d Cir. 1996). Nonetheless, "[t]he Supreme Court consistently has declined to impose § 1983 liability upon defendants where the causal connection between their conduct and the constitutional injury is remote rather than direct." *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 686 (2d Cir. 1998).

*Walker v. City of New York*, No. 11-CV-00314 (CBA) (JMA), 2014 WL 12652345, at *7 (E.D.N.Y. Sept. 3, 2014), *aff'd*, 638 F. App'x 29 (2d Cir. 2016); *see also Owen v. City of Independence*, 445 U.S. 622, 654 (1980) ("It hardly seems unjust to require a municipal defendant which has violated a citizen's constitutional rights to compensate him for the injury suffered thereby."); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").

Best claims that "the City . . . penalized Best[] by denying it a franchise[] because Best refused to forfeit its constitutional rights." Pl.'s Supp. Br., ECF No. 558, at 8. Best has consistently complained of an actual injury throughout the course of this litigation. *See* TAC ¶¶ 182, 193.[5] In its initial Response brief, Best succinctly states: "All of the injuries that Best suffered – the loss of registry rights, the seizing of its public pay phones, the denial of a franchise – were the direct consequences of Best's refusal to submit to this unlawful condition. That alone is sufficient to establish municipal liability." Pl.'s Resp. Opp. Mot. Summ. J., ECF No. 486, at 26; *see* Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 488-1, at 13; *see also* Chaite Decl. ¶¶ 65–90. This Court believes that significant factual issues remain as to whether Best would have timely executed the Franchise Agreement absent a waiver provision—or whether the City would have accepted Best's late-

---

[5]    In its Third Amended Complaint, Best states that the "unjustified removal and destruction of Best's Public pay phones and associated property damages Best, *inter alia*, with respect to the cost of the equipment damages, the loss of income while Public pay phones were not on site, the cost of re-installation of the Public pay phones, liability for fines pursued by DoITT, the inability to perform contracts with site owners and lessees, and the reduced sale price of Best's physical assets when sold." TAC ¶ 182. Best also states that the unlawful removal of its public pay phones "damages Best, *inter alia*, with respect to the cost of the equipment damages, the loss of income while Public pay phones were not on site, the cost of re-installation of the Public pay phones, liability for fines pursued by DoITT, the inability to perform contracts for Public pay phones with site owners and lessees, and the reduced sale price of Best's physical assets when they were finally sold." TAC ¶ 193.

submitted Agreement absent Best's refusal to submit to the waiver—and, for this reason, declines to recommend the entry of summary judgment.

Best now requests, in its supplemental reply brief, that if the Court *does not* find uncontroverted evidence of actual harm, then the Court should still find liability for the alleged constitutional violation. Best argues that it can recover for nominal damages absent evidence of actual harm. Pl.'s Supp. Reply, ECF No. 569, at 9.[6]

The Second Circuit has instructed that, "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996) (citation omitted). Furthermore, "[t]he court must resolve all ambiguities and draw all inferences in favor of the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

But in this case, the factual issues that pertain to the Plaintiff's actual damages are inextricably bound up with the alleged constitutional violation itself. Central to the case is a determination of *why*, precisely, Plaintiff was denied a governmental benefit: the caselaw is clear that the government may not "coercively withhold[] benefits from those who exercise [constitutional rights]." *Koontz*, 570 U.S. at 606. Plaintiff claims that the "record is clear that absent the waiver, Best would have submitted the [Franchise Agreement]." Pl.'s Supp. Reply at 10. In support, Best claims that it, in fact, "*did* submit the [Franchise Agreement] on May 10, 2000 – and the only aspect of the [Franchise Agreement] it would not accede to was the waiver itself." *Id.* (citations omitted). What Best fails to appreciate, however, is that it executed the Agreement after the final deadline for submission[7]—the record is not clear that the City would

---

[6]    Best cites two cases in support of its request, one of which recognizes that "denial of due process 'should be actionable for nominal damages without proof of actual injury;'" and the other upheld a jury verdict of nominal damages where plaintiff demonstrate a violation of constitutional right but failed to demonstrate proximate cause. *Id.* at 9–10 (citing *Poventud v. City of New York*, 750 F.3d 121, 137 (2d Cir. 2014) and *Carlton v. C.O. Pearson*, 384 F. Supp. 3d 382 (W.D.N.Y. 2019)).

[7]    As a final extension, Best was granted until March 13, 2000 to submit executed copies of the Franchise Agreement to the City. Def.'s 56.1 Statement, ECF No. 485-1 ¶ 31. The City warned Best

have accepted Best's executed Franchise Agreement absent Best's reservation of the right to challenge the agreement, nor is the record clear that Best would have submitted an executed Franchise Agreement before the execution deadline if the Agreement did not contain a waiver.[8] Thus, this Court cannot find that Plaintiff's denial of rights under the Franchise Agreement was a natural and direct consequence of the City's inclusion of a waiver provision in the Agreement.

To return briefly to *Perry v. Sindermann*, the Court there determined that a public-school teacher's lack of a contractual or tenure right to re-employment was "immaterial to his free speech claim." *Perry*, 408 U.S. at 597. After the Board of Regents terminated Mr. Sindermann, it issued a "press release setting forth allegations of the respondent's insubordination." *Id.* at 595. That document stated, for instance, that Mr. Sindermann "defied his superiors by attending legislative committee meetings when college officials had specifically refused to permit him to leave his classes for that purpose." *Id.* at 595 n.1. Of course, the veracity of the Board's reasoning was in dispute: Mr. Sindermann claimed that he was fired for his public disagreements with the administration. In the district court, the Board denied that its employment decision was made in retaliation of Mr. Sindermann's protected speech and relied on its aforementioned press release for support. *Id.* at 595. The district court did not reach the factual dispute because it found dispositive the notion that Mr. Sindermann's employment contract had expired and did not contain

---

that if it did not submit the documents by that date, "Best's opportunity to become a franchise holder during the current phase of franchise grants will end." *Id.* ¶ 31. Best did not submit an executed version of the Franchise Agreement until May 10, 2000. *Id.* ¶ 48. Best's signed Agreement "contained unapproved changed to the provisions in the corporate resolution section" and stated that the Agreement was signed "under duress" in addition to reserving rights to challenge the agreement. *Id.* Best does not presently claim that the City lacked authority to set a timetable for the execution of the Agreement. *See also id.* ¶ 50 (stating that the City rejected Best's executed Franchise Agreement because it was "submitted two months after the expiration of the [deadline], with a unilateral alteration to one of the closing documents, and, in any event, failed to contain all the required closing documents.").

[8]     For instance, Mr. Chaite repeatedly requested extensions of the deadline for the execution of the Franchise Agreement so that he could move forward with his desire to sell Best. *See* Mot. Summ. J., Ex. M (letter from Mr. Chaite to DoITT), ECF No. 485-3 (stating that he was "in negotiations to sell the stock of the two franchise approved pay telephone businesses . . . ."; Mot. Summ. J, Ex. R. (letter from Mr. Chaite to the City), ECF No. 485-3 ("Best is in negotiations with two separate parties to sell either its stock or its assets. *This is why time has not been devoted to assembling the necessary packet*." (emphasis added)); Mot. Summ. J., Ex. V (letter from Mr. Chaite to the City), ECF No. 485-3 ("[A]t this time Best requests an extension to finalize its agreement with its buyer.").

a right to renewal.[9]  *Id.* at 596.  The Supreme Court held that the Board's decision not to renew the employment contract was actionable, even though Mr. Sindermann was not entitled to a renewal. *Id.* at 597.  However, because there had not been adequate factual development regarding whether the Board, in fact, refused to renew Mr. Sindermann's contract *because of* his protected speech, the Court could not "hold that the Board of Regents' action was invalid" and remanded the case so that the district court could convene a forum to determine the facts.[10]  *Id.* at 596, 598.

As in *Perry*, there is a dispute regarding *why* the plaintiff was denied a benefit.  In this case, the parties dispute whether the City *caused* Best to be denied rights under the Franchise Agreement when it included a waiver provision in the Agreement.  *See* Pl.'s Supp. Reply, ECF No. 569, at 10; Def.'s Supp. Br., ECF No. 559, at 13.  Like in *Perry*, it would be error for this court to preclude factual development to resolve that dispute.

A recent Ninth Circuit case sheds further light.  In *Emmert Industrial Corporation v. City of Milwaukie*, 307 F. App'x 65 (9th Cir. 2009), the court affirmed the grant of summary judgment in favor of the city defendant in an unconstitutional conditions case where "the record show[ed] that the litigation waiver was not a but-for dealbreaker."  *Id.* at 67.  The plaintiff "objected to several provisions of the proposed agreement, and each was independently fatal to the settlement." *Id.*  Thus, the court reasoned that the plaintiff could not show the causation element required in a § 1983 action.  *Id.*

---

[9]     Because it is irrelevant to our current discussion, this Court ignores *Perry*'s discussion of procedural due process.

[10]     This Court recognizes that the nomenclature of *Perry* differs slightly from that of this case, in that *Perry* consistently refers to the Board's action as "retaliation" for the exercise of a constitutional right, whereas here the allegation is that the City "conditioned" the agreement on the waiver of a right.  This difference is immaterial—in the present context, at least—for two reasons.  *First*, the Supreme Court and the Second Circuit have consistently cited to *Perry* as a case involving the "unconstitutional conditions" doctrine.  *See, e.g.*, *Koontz*, 570 U.S. at 606; *Umbehr*, 518 U.S. at 674; *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990); *Planned Parenthood Fed'n of Am., Inc. v. Agency for Int'l Dev.*, 915 F.2d 59, 63 (2d Cir. 1990); *see also Safepath Sys. LLC v. New York City Dep't of Educ.*, 563 F. App'x 851, 856 (2d Cir. 2014) (referring to First Amendment retaliation and unconstitutional conditions as same).  *Second*, the mechanism in *Perry* is the same as here—a governmental entity is alleged to have denied a benefit after the assertion of a constitutional right.

Like in *Emmert*, Best objected to several provisions of the Franchise Agreement and had independent reasons for refusing to immediately sign the agreement, including its desire to sell its business.  This claim should proceed to trial where Best can have an opportunity to develop the necessary facts to prove causation.

### C. Conclusion

This Court finds that there are controverted facts essential to Best's unconstitutional conditions claim and, therefore, respectfully recommends that summary judgment be DENIED.

### D. Objections to this Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**


_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Brooklyn, New York
        November 16, 2020

14